SEXTON v. The TROY. See Case No. 4,115.

# Case No. 12,684.

## In re SEYMOUR.

[1 Ben. 348;[1] Bankr. Reg. Supp. 7: 1 N. B. R. 29; 6 Int. Rev. Rec. 60.]

District Court, S. D. New York. Aug., 1867.

HABEAS CORPUS—FRAUDULENT DEBT—PENDENCY OF BANKRUPTCY PROCEEDINGS—DISCHARGE FROM ARREST UNDER STATE AUTHORITY.

1. Where R., a merchant in New York, deposited goods with S., a merchant in New Orleans, for sale on commission, and S. sold them, but made no returns, and thereupon R. commenced a suit against S. in the superior court of the city of New York, and obtained an order of arrest, under which S. was arrested, and, after trial and judgment against him, S. was held by the sheriff under an execution issued against his person on the judgment, and, having filed his petition in bankruptcy before the district court in Louisiana, now applied to this court and obtained a writ of habeas corpus, and also presented a petition praying that he might be discharged from imprisonment pending the bankruptcy proceedings, and that all proceedings in the state court against him might be stayed, pending such proceedings, and the return to the writ and the answer to the petition showed the above facts: held, that, under the twenty-sixth section of the bankruptcy act [of 1867 (14 Stat. 529)] a bankrupt may, notwithstanding the pendency of proceedings in bankruptcy by or against him, be held under arrest in a civil action, if it is founded on a debt or claim from which his discharge in bankruptcy would not release him.

[Cited in brief in Hazleton v. Valentine, Case No. 6,287.]

[Cited in Gibson v. Gorman, 44 N. J. Law 328; Donald v. Kell, 111 Ind. 3, 11 N. E. 783.]

2. Under that act, no debt created by the defalcation of a bankrupt, while acting in any fiduciary capacity, will be discharged.

[Followed in Re Kimball, Case No. 7,768; Cited in Re Smith, Id. 12,976; Fulton v. Hammond, 11 Fed. 294; Zeperink v. Card, Id. 296; Hennequin v. Clews, 111 U. S. 680, 4 Sup. Ct. 578.]

[Cited in Flanagan v. Pearson, 42 Tex. 1; Lemcke v. Booth, 47 Mo. 387.]

3. The debt contracted by S. was contracted by his defalcation while acting in a fiduciary capacity.

4. It was, therefore, a debt which, under the thirty-third section of the act, would not be released by his discharge in bankruptcy.

5. The twenty-first section of the bankruptcy act does not apply to any suit brought to collect or enforce or satisfy any debt which would not be discharged by a discharge under the act.

[Overruled in Re Rosenberg, Case No. 12,054. Disapproved in Re Ghirardelli, Id. 5,376.]

6. The twenty-seventh rule of the general orders in bankruptcy applies only to the court in which the bankruptcy proceedings are pending.

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

and, therefore, does not apply to this court in this case.

7. If S. was held by the state court in violation of any law of the United States, this court would have power to release him on habeas corpus, under the act of February 5th, 1867 [14 Stat. 385].

This case came up on a writ of habeas corpus issued, on the petition of James W. Seymour, to the sheriff of the city and county of New York, in whose custody he was held. The sheriff returned to the writ, that he arrested Seymour and took him into custody on the 3d of September, 1866, by virtue of an order of arrest issued by a justice of the superior court of the city of New York, under the Code of Procedure of the state of New York, in a civil action in that court, wherein Constantine Rosswog was plaintiff and the petitioner was defendant; that Seymour remained in his custody under said order until the 22d of September, 1866, when he was discharged on bail; that, on the 3d of July, 1867, his bail surrendered him into the custody of said sheriff, in exoneration of themselves as his bail; that the sheriff, thereupon received and thereafter held and detained Seymour in his custody by virtue of such surrender; that, on the 20th of July, 1867, an execution against the person of Seymour in said action was duly issued to said sheriff, and that the debt embraced in the judgment set forth in the execution was created by the fraud or embezzlement of Seymour or by his defalcation while acting in a fiduciary character. [That section declares as follows: "No debt created by the fraud or embezzlement of the bankrupt, or by his defalcation as a public officer, or while acting in any fiduciary character, shall be discharged under the act, but the debt may be proved, and the dividend thereon shall be a payment on account of said debt."] [2]

In connection with the petition for this writ of habeas corpus, and the writ itself, and the return thereto, Seymour presented to this court a petition, praying for his discharge from imprisonment and arrest during the pendency of proceedings in bankruptcy which he had instituted, and that all proceedings in the state court be stayed until the termination of said proceedings in bankruptcy. This petition showed that the suit in the superior court was commenced August 22d, 1866; that Seymour was held to bail, under an order of arrest in the suit, in the sum of five thousand dollars; that, on the 24th of June, 1867, he filed his voluntary petition in bankruptcy, in the district court of the United States for the Eastern district of Louisiana, praying for his discharge under the bankruptcy act of March 2d, 1867; that, on the 20th of July, 1867, he was duly adjudicated a bankrupt by the court in Louisiana; and that the indebted-

ness to Rosswog was included in the schedule to the petition in bankruptcy, and was provable under the act. Annexed to the petition was a copy of the judgment roll in the suit in the superior court. By this it appeared, that the cause of action in the suit was, that, in 1860, Rosswog, a manufacturing jeweler in New York, deposited with Seymour, then a wholesale jeweler in New Orleans, certain manufactured jewelry worth three thousand nine hundred and seventy-one dollars and seventy-five cents, which was deposited with Seymour for sale on commission, the proceeds to be remitted to Rosswog as soon as the goods should be sold, less five per cent. for cash, and, if the same should be sold on a credit, then Seymour should remit to Rosswog good business notes for the same, endorsed by Seymour; that Seymour received the goods for sale on those conditions, but had never rendered any account of them or paid for them; that Rosswog had demanded the goods from Seymour, and Seymour had refused to deliver them; that Seymour had sold many of the goods and received the price thereof, but failed and refused to pay over the same to Rosswog; and that Seymour had converted the goods, or the proceeds thereof, to his own use. The complaint claimed damages in twelve thousand dollars. The answer of Seymour denied all the material allegations of the complaint, and denied his indebtedness in any sum whatever. The case was tried before a jury May 10th, 1867, and a verdict was rendered for the plaintiff for five thousand two hundred and forty-two dollars and ninety cents, upon which judgment was perfected in the sum of five thousand five hundred and ninety-two dollars and seventy-four cents, May 18th, 1867. The answer of Rosswog to the petition of Seymour showed that Rosswog had not proved his claim against Seymour in the bankruptcy proceedings, and claimed that the debt was created by Seymour while Seymour was acting in a fiduciary character toward Rosswog, and that no proceedings in bankruptcy affected the debt or the remedies of Rosswog therefor. It was claimed, on the part of Seymour, that the debt in question was not within the enumeration of debts in the thirty-third section of the bankruptcy act, which can not be discharged under the act. [The execution is issued from the said superior court, and recites that a judgment was rendered on the 18th day of May, 1867, in an action in said court, between said Rosswog, plaintiff, and said Seymour, defendant, in favor of Rosswog against Seymour for $5,592.74, and that the said sum, with interest from May 8, 1867, is actually due thereon, and that an execution against the property of Seymour has been duly issued to the sheriff of the proper county, and returned unsatisfied. It then commands the sheriff to arrest Seymour and commit him to the jail of the county of the sheriff until he shall

---

[2] [From 1 N. B. R. 29.]

pay the judgment or be discharged according to law.] [3]

Thomas Dunphy, for Seymour.

R. B. Roosevelt, G. F. Noyes, and J. F. Daly, for Rosswog and the sheriff.

BLATCHFORD, District Judge. The twenty-sixth section of the bankruptcy act provides as follows: "No bankrupt shall be liable to arrest during the pendency of the proceedings in bankruptcy, in any civil action, unless the same is founded on some debtor claim from which his discharge in bankruptcy would not release him." The purport of this provision of the twenty-sixth section is, that no person shall be held under arrest, or suffer imprisonment, in any civil action, during the pendency of proceedings in bankruptcy by or against him, whether he is first put under arrest after the commencement of the proceedings, or is imprisoned at the time the proceedings are commenced, unless the action is founded on some debt or claim from which his discharge in bankruptcy would not release him; but that he may, notwithstanding the pendency of proceedings in bankruptcy by or against him, be held under arrest, and suffer imprisonment, in a civil action, if such action is founded on a debt or claim from which his discharge in bankruptcy would not release him.

The question, therefore, arises, whether the debt due to Rosswog is one from which Seymour's discharge in bankruptcy would release him. In other words, is such debt, within the language of the thirty-third section of the act, a debt created by the fraud of Seymour, or by his defalcation while acting in a fiduciary character? According to well settled authority, such a debt was created by the defalcation of Seymour while acting in a fiduciary character. The depositing of the property with Seymour for sale on commission for Rosswog, established a fiduciary relation between them, and charged Seymour with the execution of a trust on behalf of Rosswog, under which it was his duty either to return the property to Rosswog or to remit to him its proceeds. His failure to do so was a defalcation by him while acting in such fiduciary capacity, and such defalcation created the debt to Rosswog. Such debt will, therefore, not be discharged by the discharge of Seymour in bankruptcy, and consequently such debt is one for which, in a civil action founded on it, Seymour may be arrested and held under imprisonment during the pendency of proceedings in bankruptcy.

The case of Chapman v. Forsyth, 2 How. [43 U. S.] 202, only decides that a balance due from a factor to his principal, for goods of the principal's sold by the factor, is not a fiduciary debt within the meaning of the bankruptcy act of 1841 [5 Stat. 440]. The

act of 1841 excluded from its benefits "all persons owing debts created in consequence of a defalcation as a public officer, or as executor, administrator, guardian or trustee, or while acting in any other fiduciary capacity." The supreme court held, in Chapman v. Forsyth, that a discharge under the act of 1841 did not release the bankrupt from any such debts, and that no debt fell within the description of a debt created by a defalcation "while acting in any other fiduciary capacity," unless it was a debt created by a defalcation while acting in a capacity of the same class and character as the capacity of executor, administrator, guardian and trustee. The court held, that the language of the act of 1841 was not broad enough to include every fiduciary capacity, but was limited to fiduciary capacities of a specified standard or character. That was clearly so, under that act. But, in the act of 1867, the language seems to have been intentionally made so broad as to extend to a debt created by a defalcation of the bankrupt while acting in any fiduciary capacity, and not to be limited to any special fiduciary capacity. Therefore, under the act of 1867, no debt created by the defalcation of a bankrupt while acting in any fiduciary capacity will be discharged, and a bankrupt can be imprisoned, during the pendency of proceedings in bankruptcy by or against him, in a civil action founded on any such debt.

The twenty-first section of the bankruptcy act does not apply to the present case. As Rosswog has not proved his debt in the bankruptcy proceedings by Seymour, he is not within the inhibitions imposed by that section on a creditor who proves his debt or claim. There is another provision of the twenty-first section, which is as follows: "No creditor whose debt is provable under this act shall be allowed to prosecute to final judgment any suit at law or in equity therefor against the bankrupt, until the question of the debtor's discharge shall have been determined, and any such suit or proceeding shall, upon the application of the bankrupt, be stayed, to await the determination of the court in bankruptcy on the question of the discharge; provided there be no unreasonable delay on the part of the bankrupt in endeavoring to obtain his discharge, and provided, also, that if the amount due the creditor is in dispute, the suit, by leave of the court in bankruptcy, may proceed to judgment for the purpose of ascertaining the amount due, which amount may be proved in bankruptcy, but execution shall be stayed as aforesaid." This provision cannot be regarded as applying to any suit or proceedings brought to collect or enforce or satisfy any debt which would not be discharged by a discharge granted under the act.[4] There

---

[3] [From 1 N. B. R. 29.]

[4] In the Case of Rosenberg [Case No. 12,054], decided in November, 1868, Judge Blatchford

can be no reason for staying any suit or proceedings to collect or enforce or satisfy a debt, until the question of the debtor's discharge shall have been determined by the court, if the discharge, when granted, will not discharge the debt. The statute ought not to be interpreted as extending to the staying of any suit or proceedings to collect or enforce or satisfy a debt which cannot be discharged, if any other interpretation is consistent with the language. If the reason for the stay ceases, the presumption is that the legislature did not intend that there should be a stay. No greater scope can be given to the suits and proceedings and debts named in the provision, than is given to the discharge by the act, and, as the act does not extend the effect of a discharge to the releasing of a debt created by the defalcation of the bankrupt while acting in a fiduciary character, this provision of the twenty-first section cannot be regarded as referring to the staying of any suit or proceedings to collect or enforce or satisfy such a debt.

It was urged, that the twenty-seventh rule of the "General Orders in Bankruptcy," provided for the release of Seymour, although the act might not in terms apply to the case. That rule provides as follows: "If the petitioner, during the pendency of the proceedings in bankruptcy, be arrested or imprisoned upon process in any civil action, the district court, upon his application, may issue a writ of habeas corpus to bring him before the court, to ascertain whether such process has been issued for the collection of any claim provable in bankruptcy, and, if so provable, he shall be discharged; if not, he shall be remanded to the custody in which he may lawfully be." Without deciding whether this rule can, in any case, be construed as extending the exemption from imprisonment further than it is extended by the act itself, it is sufficient to say that the rule applies only to the court in which the proceedings in bankruptcy are pending. In the present case, the proceedings in bankruptcy are not pending in this court, and, therefore, the rule does not apply to this court.

If Seymour were restrained of his liberty under the process of a state court in violation of any law of the United States, this court would, under the provisions of the act of February 5th, 1867 (14 Stat. 385), have power to release him on habeas corpus. That act extends the power of this court to such a case.

The result is, that Seymour must be remanded to the custody of the sheriff, and the prayer of his petition must be denied.

---

held that this view of the twenty-first section was erroneous, and that the effect of that section was, that proceedings in a suit against the bankrupt to recover a provable debt must be stayed, whether that debt would be discharged or not by the discharge in bankruptcy.